No. 588

First Circuit

FOLSE v. HANNAGRIFF & EDMONDSON

(April 14, 1930.   Opinion and Decree.)
(June 9, 1930.   Rehearing Refused.)
(August 7, 1930.   Writs of Certiorari and Review Refused by Supreme Court.)

Miller & Heintz, of Covington, attorneys for plaintiff, appellee.

Milner & Porteous, of New Orleans, and Miller & Richardson, of Bogalusa, attorneys for defendants, appellants.

ELLIOTT, J.   Numa J. Folse, the plaintiff, was badly injured in a collision between an automobile belonging to· and while being driven by himself and another motor vehicle belonging to Hanna-

griff & Edmondson while being driven by a negro boy named Harry Sutton.

The occurrence took place after dark at about 8 o'clock p. m. on October 18, 1928, on the highway between Franklinton and Bogalusa.

Plaintiff's injuries were about as severe as one can sustain and live. In his petition for damages against the defendants on account of his said injuries the plaintiff avers that he was driving on the right-hand side of the road going from Bogalusa to Franklinton, which was westward, accompanied by Elton Cooper and U. B. Busby, and at a point about one mile from Bogalusa he saw, at a distance of about 200 feet or more ahead, what he subsequently ascertained was a motor wrecking truck, belonging to Hannagriff & Edmondson; that the vehicle was headed toward Bogalusa, was without lights, and was parked on the wrong side of the road, for a vehicle coming toward Bogalusa; that when he got within 40 or 50 feet of it, as it appeared to be stationary, he turned his car toward the center of the road, intending to pass to the left of it, but, when his car came within about 30 or 40 feet of it, the driver suddenly flashed on his lights, started his car in motion, and headed in a diagonal course toward the opposite side of the road to that on which he had been parked, and, in trying to cross to that side, he ran directly into and upon petitioner's car; that, when the driver of defendant's car attempted to cut across to the opposite side of the road, the distance between the two cars was so short that it was impossible to get to the opposite side of the road without striking petitioner, or to permit petitioner to pass to the right of the truck; that the action of the driver in parking said truck on the wrong side of the road, without lights, and in leaving where he was as petitioner

approached, and attempting to get across to the opposite side when petitioner was about to pass him, was gross negligence, and the sole and proximate cause of the collision and of petitioner's resulting injury.

He claims of defendants $25,000 in solido as damages on account of his personal injuries, and $250 in addition on account of the loss of his automobile, which was destroyed by fire as a result of the collision.

The defendants admit in their answer that they are a commercial partnership, doing business in Bogalusa, and further admit on information and belief that plaintiff was driving his car on the night of the accident at a speed of 20 miles an hour, if not more. They deny that their truck was parked on the wrong side of the road, without lights, and aver that plaintiff, who had been driving on the right-hand side of the road, suddenly cut across the road at about the point where the culvert crosses the road, in a diagonal way, and ran into the front fender of their truck, etc. They deny liability, and allege that plaintiff's injuries were sustained directly and proximately as a result of his own gross negligence and recklessness in turning across the road from the side on which he was driving to the center of the road.

An exception of no right of action nor cause of action filed by defendants was by the court, on their own motion, referred to the merits, and is therefore not before us as an exception.

The plaintiff recovered a judgment in the lower court for $7,500. The defendants have appealed. Defendants urge that on the trial the lower court ruled erroneously concerning the following objections:

The plaintiff opened his case by offering in evidence a judgment of the district court

of Washington parish, dated November 3, 1928, emancipating and relieving him of the time prescribed by law for attaining the age of majority, to which no objection was made at the time.

Mrs. Ledet, plaintiff's sister, later testified that their father and mother were both living, and had always lived in the parish of Lafourche; that plaintiff had been born there.

The plaintiff having completed his evidence in chief, defendants orally moved the court to dismiss the suit on the ground that the district court of Washington parish had no jurisdiction to emancipate and relieve the plaintiff of the time prescribed by law for attaining the age of majority; that said judgment of emancipation was therefore null and void.

The exception was overruled. After ruling, the court permitted the plaintiff to produce and file in evidence the entire record of the emancipation suit.

The evidence shows that plaintiff was over 18 years of age at the time of the injury, which gave rise to the suit, and had been at the time living and working in Washington parish, away from his father and mother, about 18 months. The petition for his emancipation is addressed to the district court of Washington parish. It is signed by the plaintiff, and has on it a written statement at the bottom which purports to be that of his father and mother, stating that they believe the petitioner to be fully capable of managing his own affairs, and giving their consent to his emancipation. Judgment was rendered accordingly. Plaintiff's father and mother are not parties to this suit.

The judgment is one in personam. The consent of the father and mother vested the district court of Washington parish with jurisdiction to act on the matter. The ruling was correct.

The other ruling of which defendants complain was brought about by a question which defendants asked a witness named Wroten Hall. This witness, while being questioned in chief, was asked:

"Q. How fast was that car going that passed you?
"A. It was making about 30 or 35."

The plaintiff objected before anything further could be said, on the ground that he had alleged that he was on the right side of the road, driving on the right side of the road; that defendants had admitted in their answers that he was on the right side of the road, and swerved to the left just before the accident. The court, for reasons stated in the note of testimony, sustained the objection and excluded the evidence. Defendants explained the purpose of the proffered testimony as follows:

"Counsel does not desire to contradict the judicial allegation as to the movement of plaintiff's car; however, before the wrecker went into plaintiff's car he was on the right-hand side of the road. But he alleged this swerving, which was something unknown to the defendant, and since that time defendant has found that this witness and 6 others will say that plaintiff had been swerving and zigzagging from one side of the road to the other, when they were passing him. And prior to that time plaintiff's car was on the righthand side of the road, as judicially admitted, and prior to the moment when it swerved to the left and some distance down the road, that they had been driving at an excessive rate of speed and swerving from one side of the road to the other, and we offer to prove that fact by this witness and 6 others who saw it. Having alleged that he swerved for some unknown reason, this evidence is eligible and should be admitted to prove the reason, or prove why he should be swerving at the moment he did."

Defendants urge that the evidence was admissible under the averment in their answer, article 3, in which they "deny that at the moment of the accident the plaintiff was driving on his right side of the road but aver, on the contrary, that for some reason not known to your respondents, plaintiff, who had been driving on the righthand side of the road, suddenly cut across the road at about the point where the culvert crosses the road, in a diagonal way, and ran into the front fender of your respondent's truck," etc. And article 13, in which they aver "that he (plaintiff) crossed the center of the road and ran into the front fender of respondent's truck, said truck being at all times on the right side of the road and in its proper place. But respondents aver, only in the alternative and only in the event that it may be shown on the trial hereof, that respondents or respondents' driver were guilty of any negligence whatsoever, then and in that case respondents charge that the plaintiff was guilty of gross contributory negligence continuing down to the moment of the accident, in view of plaintiff's judicial allegation that he saw respondents' car 200 feet off, and 30 or 40 feet before the accident happened. And respondents further aver that if there was any negligence on respondents' part, which is denied, then the plaintiff had the last clear chance to avoid the accident."

The lower court, in sustaining the objection, stated in effect that, if there was judicial admission that "plaintiff was driving on the right-hand side of the road up to within 30 or 40 feet of where the wreck occurred, when he suddenly swerved to the left, that they are now estopped from proving anything that happened, one, two, or three hundred yards away from the wreck," and sustained the objection.

We find, as stated by the lower court, that defendants have admitted in their answer, article 3, that plaintiff had, up until the time he cut across, been driving on the right-hand side of the road, and the purpose was to show zigzagging, etc. The ruling was correct. Civ. Code, art. 2291. The evidence was also inadmissible under article 13 of their answer. The plaintiff is not charged in article 13 with negligence in the way offered to be shown. Plaintiff's manner of driving about 300 yards before reaching the place where the collision took place had been judicially admitted. The objection was properly sustained.

The examination of the merits shows that the case depends largely on whether credit should be given to the testimony of the plaintiff and his two companions or to that of the driver of defendants' car. According to plaintiff and Cooper and Busby, the three occupying the car, they left Bogalusa between 7:30 and 8 o'clock p. m. on the night of the day mentioned, and started to the Fair at Franklinton. They got on the highway and driving about 25 miles an hour, the lights of their car burning bright, when out on the road about a mile they saw under the lights of plaintiff's car an automobile in the road about 200 feet ahead of them, facing them, without lights, parked on the right-hand side of the road in the direction they were going, and which was the wrong side for a car facing them. As it appeared to be stationary and to remain so, when plaintiff got within 40 or 50 feet of it, he swerved his car to the left, slowing down as he did so, intending to pass to the left of it. There was a culvert at about the point where he expected to pass it, but the evidence does not indicate that this culvert was the cause of the collision. Plaintiff testifies that the car which he sought to pass caused the collision by suddenly flashing on its lights about the time

he swerved, and shooting out angling toward the opposite side of the road from where it had been parked and running into his car; that the lights on defendant's car flashed out, and defendant started up across the road just before plaintiff turned to the left; that the collision took place on the left-hand side of the road in the direction plaintiff was going; that plaintiff's car turned over two or three times when it struck the other car, took fire, and was destroyed.

Cooper and Busby testified substantially as did the plaintiff. They say that plaintiff, at the moment of the impact, had slowed down to about 15 miles an hour. Busby says that the light turned on by the parked car was dim; he thought it turned on but one light; that the collision occurred in about the center of the road; that plaintiff's car had at the time passed the middle of the road.

Defendant's driver gives a totally different version of the occurrence. He testifies: That he had been out on the highway to fix a tire, and was on his way back to Bogalusa. That he was driving at about 25 miles an hour on the right-hand side of the road in the direction he was going, which was east. That, when he got within about 100 yards of the culvert, he saw plaintiff's car coming around a curve. That they were on the right side of the road, meaning the side he was on, which was the wrong side for a car going toward Franklinton. That, when they got close to him, he saw that they were not going to move, so he blew for them, jammed on his brakes, and they met on the culvert. Witness estimates that plaintiff's on-coming car was about 200 feet from him when he first saw it, and running about 25 or 30 miles an hour.

"Q. It has been testified here by Mr. Folse and the two gentlemen who were with him that your wrecker was standing still on this culvert, parked, with the lights out. What have you to say about that?

"A. I had no business parked out there. I was by myself and I was driving coming back from fixing that tire.

"Q. You were not parked?

"A. No, sir."

That both the lights on his car were burning all the time he was driving it. That the collision was not exactly head-on. That plaintiff came in a little on his left side. That his car was jammed on his left-hand side. That he had slowed down and was at the moment of the impact going at about 10 miles an hour.

H. R. Middleton, who saw both cars almost immediately after the collision, stated that the best he could remember was that the coupe, which was plaintiff's car, was wrecked on its right side, and defendant's car on its left front end. This is consistent with the version of plaintiff and his companions. But, if plaintiff had been driving on the left-hand side of the road, going toward Franklinton, and if defendant's driver had maintained his position on the right-hand side of the road going toward Bogalusa, as he contends, then the impact must have been head-on; and, if not head-on, then the most likely result would have been that plaintiff's car would have been struck on its left front end, and defendant's on its front end. The photographs show that plaintiff's car was struck on the right front end, and defendant's seemingly mostly on the front end; which again corroborates the plaintiff and contradicts defendant's driver.

A witness, Mr. Simmons, stated that on the night of the collision he passed defendant's wrecker parked on the highway, without lights, about 2½ miles west of

where the collision took place; that a negro boy was standing in front of it; that he hollered at the boy, and told him to put on his lights. The fact that defendant's car had been thus seen parked without lights some 2½ miles west of the place where plaintiff says he found it parked, without lights, is also some, though very light, corroboration of plaintiff's contention.

There is also some testimony which tends to support the defense: A policeman on night duty in Bogalusa testified that he saw the plaintiff, Folse, and Elton Cooper on Columbia street between 7:30 and 8 p. m. on the night in question. He noticed Cooper, the way he was walking, and that he was bareheaded, and says he was drinking. He further testified that he had arrested Cooper several times for drinking, that he also looked across the street, and saw Folse sitting with his arm on the seat of the coupe; that just before Cooper got to the car Folse said, "Come let's go to the Fair." A few minutes afterwards he got notice of the wreck on the highway, that Cooper had turned the car over, or something like that.

Cooper testified that he did not see the policeman, and that he was not drinking nor driving the night in question. Plaintiff did stop on Columbia street, and Folse testified that, while they were stopped, Busby was sitting in the car with him. The officer did not speak of seeing Busby, and Busby did not speak of seeing the policeman.

Wroten Hall testified that he was in a Ford touring car with six others on the night in question going from Bogalusa to the fair in Franklinton; that plaintiff and his two companions passed them at Nye's filling station, making about 30 or 35 miles an hour; that they went on about 300 yards from there and ran into the wrecker; that they went on down there; that there were some there before them, etc. This witness further testified:

"Q. When was the last time, prior to the accident, that you saw the Ford car on the righthand side of the road heading toward Franklinton?
"A. The last time I saw it was before he hit the wrecker, about 50 feet away, I guess. Then it was on the righthand side of the road.
"Q. What did it do then?
"A. He wheeled over to the left and ran into the wrecker.
"Q. Where was the wrecker?
"A. On the righthand side, as near as it could get to the curve of the bridge.
"Q. The wrecker was on its righthand side of the road?
"A. Yes, sir.
"Q. And the coupe was on its righthand side of the road?
"A. Yes, sir.
"Q. Until it was about 50 feet toward Bogalusa from the wrecker?
"A. Yes, sir.
"Q. The coupe swung to the left and ran into the wrecker?
"A. Yes, sir.
"Q. Was this the first time he swerved from one side of the road to the other before the accident? (Objection made and question not answered.)"

Another witness, a member of the party of seven who was in the automobile with Wroten Hall, stated that when the coupe passed them it nearly ran into them.

If, as the witness Hall says, he and his six companions were in an automobile about 100 yards behind plaintiff, and, like the plaintiff and his companions, on their way to the fair at Franklinton, he and his companions should have been the first to reach the scene of the wreck, but such was not the case.

Several men living on the roadside heard the crash of the collision, saw the fire,

and ran out of their houses and yards, some a distance estimated as about 50 feet, etc., another a distance of about 100 yards, and reached the place several minutes before the witness Hall and his companions did, in their automobile. In fact, Hall and his companions were among the last to arrive there. It follows that Hall and his companions could not have been near enough, in the dark, to have seen plaintiff curve across the road to his left and run into defendant's wrecker, as Hall claims to have done. The lower court could not have believed him, because his judgment is inconsistent with Hall's testimony.

The credit due these various witnesses was evidently taken into account by the lower court. The note of testimony contains admissions in the application of which he was in a better position to judge than can be done on the appeal in this case.

The municipal speed limit was 15 miles an hour. The collision took place within the incorporated limits of the city of Bogalusa, but not within the street limits. It took place on the highway. The evidence is silent as to where the streets, in the direction plaintiff was going, ended and the highway commenced, but it is, we think, fairly inferable from the evidence that the city street system did not extend to the place where the collision occurred. The ordinance on the subject says:

"In the city limits no vehicle shall under any circumstances be driven at a greater speed than 15 miles per hour."

Some exceptions provided are not relevant to the present case. But the ordinance, notwithstanding the above language, when considered as a whole, appears to have exclusive reference to street traffic. It is commenced by the designation:

"Ordinance No. 189, Governing the street traffic in the City of Bogalusa."

The provisions of the ordinance have reference to the use of the streets only, and therefore did not govern in the matter of speed at the place where the collision took place.

The Act of 1928, No. 296, subsection (b), of section 5, governs as to speed on the highway in question. Fifteen miles an hour is the provided speed for traversing or going around curves. But it does not appear that the present collision occurred in a curve. Harry Sutton, driver of defendant's car, in saying, "I was coming from towards Franklinton fixing a tire, when I got about a hundred yards from the culvert I seen these people coming around the curve at the service station; they were on the right side of the road," does not necessarily mean that the collision took place on a curve. There is no evidence to that effect. The facts, therefore, bear out plaintiff's contention that defendant's car was parked in the dark, without lights, on the wrong side of the road, and as plaintiff came up close, defendant's car appearing to be stationary, plaintiff was justified in swerving to the left for the purpose of passing to the left of it. It was therefore actionable fault for defendant to suddenly start up and shoot across to the opposite side of the road.

Defendant's act and fault appears to have caused the collision, as claimed by the plaintiff.

The court properly rendered judgment in favor of the plaintiff.

Judgment affirmed; defendant and appellant to pay the cost in both courts.